UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGEL EMILIO GIRON REYES,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03205-JNW<br><br>ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Angel Emilio Giron Reyes's petition for a writ of habeas corpus. Dkt. No. 1. The Court GRANTS the petition and orders Giron Reyes RELEASED for the reasons below.

## 1. BACKGROUND

Giron Reyes entered the United States as an unaccompanied minor in January 2022. Dkt. No. 7 ¶¶ 4–6. U.S. Customs and Border Patrol ("CBP") detained him and served him with a notice to appear charging him as inadmissible. *Id.* ¶ 7. CBP failed to file the notice to appear with the Executive Office for Immigration Review ("EOIR"), though, so it appears no removal hearing was ever actually

scheduled. *Id*. On February 28, 2022, Office of Refugee Resettlement ("ORR") released Giron Reyes to his uncle in Fort Pierce, Florida. *Id.* ¶ 9; Dkt. No. 1 at 3.

In October 2024, Giron Reyes applied for asylum with United States Immigration and Citizenship Services ("USCIS"). Dkt. No. 7 ¶ 10. He continues to live and work in Fort Pierce, and has an infant son who is a U.S. citizen. Dkt. No. 1 at 3. He has a temporary Florida driver license and work authorization. *See id.*; Dkt. No. 8-1 at 3. On July 22, 2026, a police officer pulled Giron Reyes over in Vero Beach, Florida, for an unknown reason. *See id.*; Dkt. No. 7 ¶ 12 (failing to state reason for traffic stop). The police officer called ICE, which arrested Giron Reyes and transferred him to the Northwest ICE Processing Center ("NWIPC"), in Tacoma, Washington, where he remains. Dkt. Nos. 1 at 3; 7 ¶¶ 12–13. ICE's record of the arrest states that he was arrested because he "has no legal status in the United States and does not have any pending claims to U.S. citizenship, lawful permanent resident status, or applications for relief." Dkt. No. 8-1 at 3. But the same page of the same record acknowledges that Giron Reyes has an "approved 765," or employment authorization document, and a "pending 589," or asylum application. *Id.*

## 2. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723,

779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

The Government says 8 U.S.C. § 1225(b)(2) applies because Border Patrol encountered Giron Reyes at the border in 2022, and his release never "erase[d] his original classification." Dkt. No. 6 at 4. The Ninth Circuit has held that § 1225(b)(2)(A) governs noncitizens entering at the border and that § 1226 governs noncitizens present in the interior. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026). That decision didn't involve someone apprehended at the border, released, and arrested again years later, and the Government cites no authority for the idea that a border encounter follows a person for life. The statute points the other way. Section 1225(b)(2)(A) requires detention "for a proceeding under section 1229a." *See Rodriguez Vazquez*, 183 F.4th at 1169 ("The final reference to 'section 1229a of this title' is to the removal proceedings themselves.").

As best the Court can tell on this record, no proceeding began in 2022 and DHS transferred Giron Reyes to ORR, which released him. Nothing in the record shows that ORR's release was a parole or came with conditions, and the Government identifies none. What happened in July 2026 was a new arrest in the interior for a proceeding that began weeks later. That is Section 1226 detention. Accordingly, Section 1225(b)(2) is not a lawful basis for Giron Reyes's detention, and Giron Reyes has "deomonstrate[d] that he is being held pursuant to 'the [Government's] erroneous application or interpretation' of relevant law." *Boumediene*, 553 U.S. at 779 (quoting *St. Cyr*, 533 U.S. at 302).

The Government asserts that "[e]ven if Petitioner is detained pursuant to Section 1226(a), Petitioner does not assert that he has requested a bond redetermination hearing or that he has been denied a hearing due to his mandatory detention status." Dkt. No. 6 at 4. The Government fails to explain why that matters, though, especially considering its argument that Giron Reyes is not entitled to a bond hearing because he is subject to mandatory detention under Section 1225(b)(2). Asking for a hearing the Government says he can't have would have been futile, and a bond hearing wouldn't address his claim that the Government revoked his release without any process at all.

Because Section 1225(a) governs, the question is what process the Government owed Giron Reyes before revoking his release. Courts in this District have applied *Mathews v. Eldridge*, 424 U.S. 319 (1976), when grappling with this question and found again and again that due process requires the Government to give meaningful notice and a pre-deprivation hearing before revoking a noncitizen's

release and returning them to custody. *Rahmani v. Scott*, No. 2:26-cv-02423-JNW, 2026 WL 2581952, at *2 n.1 (W.D. Wash. Sept. 1, 2026) (collecting cases). The Court finds no reason to distinguish this case from all the others, nor does the Government offer one.

The first *Mathews* factor considers the private interest affected by the official action. *Mathews*, 424 U.S. at 335. Here, that is Giron Reyes's constitutional liberty interest, or his interest in being free from imprisonment. Indeed, an unaccompanied minor who is released to a sponsor "obtains a liberty interest in their continued freedom, even after reaching adulthood." *Aparicio Giron v. Warden of the Golden State Annex*, No. 1:26-cv-03891 (VC), 2026 WL 2606397, at *2 (E.D. Cal. Sept. 2, 2026) (collecting cases). An individual's "interest in not being detained is 'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004)). It "lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

The second *Mathews* factor—the risk of erroneous deprivation—also weighs heavily in Giron Reyes's favor. ICE detained him under a statute that doesn't apply, and its own arrest record contradicts itself on whether he has any application for relief, and no one has ever found him a flight risk or a danger; he asked an immigration judge to review his custody in 2022 and never got that review. These issues could have been addressed at a hearing.

As for the third *Mathews* factor, the Court finds that the Government's interests in Giron Reyes's re-detention without a hearing is minimal, as it has

previously concluded. *Espinoza Palacios v. Hermosillo*, No. 2:26-cv-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026) (citing *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025).

Weighing the *Mathews* factors, the Court finds that before re-detaining Giron Reyes, the Government had to provide adequate notice and a hearing before an immigration judge, where the Government bore the burden of showing flight risk or danger to the community by clear and convincing evidence. *See id*. ("The Court agrees with Petitioners that a heightened evidentiary standard is appropriate in Petitioners' cases because "each Petitioner's initial release [necessarily] reflected a government determination that they were not a danger or a flight risk, and it is the Government that seeks to reverse that determination and reimpose confinement."); *Cornejo v. Andrews*, 823 F.Supp.3d 1085, 1097 (E.D. Cal. 2026) ("In releasing Petitioner . . ., [the Government] must have determined that he was neither a flight risk nor a danger to the community.").

Accordingly, the Court finds that the Government re-detained Giron Reyes in violation of the Constitution. A bond hearing now can't cure that deprivation; release is the proper remedy. *See e.g., E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Kumar v. Bondi*, No. 2:25-cv-02285, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 16, 2025) ("[R]elease following post-deprivation procedures is insufficient to remedy the alleged harm because the

alleged harm, i.e., potentially erroneous detention, has happened and is continuing to occur.").

Giron Reyes's memorandum in support of his pro se habeas petition also asks the Court for certain injunctive relief, including that the Government be enjoined from re-detaining him without adequate notice and a pre-deprivation hearing. Dkt. No. 1-1 at 11–12. The Government does not address or oppose that relief, and the Court finds injunctive relief appropriate after considering the requirements for a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). First, Giron Reyes suffered irreparable injury when he was deprived of his liberty without due process, then transferred far away from his home and detained for months based on a rejected reading of Section 1225(b). No monetary remedy can compensate for that constitutional deprivation. The balance of hardships favors Giron Reyes, as the injunction requires only that the Government comply with due process before re-detaining him. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause.

The Court further finds that injunctive relief is appropriate because Giron Reyes has shown a "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has detained him once already in violation of his due process rights. "Additionally, it is well known in this District that ICE revokes noncitizens' release and detains them without due process." *Rahmani*, 2026 WL 2581952, at *2 n.1 (collecting cases).

Accordingly, the Court ORDERS:

1. Petitioner's petition for a writ of habeas corpus is GRANTED. Dkt. No. 1.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) HOURS of this order.
3. Respondents must file a status report within FORTY-EIGHT (48) HOURS of this order confirming Petitioner's release.
4. Petitioner may not be re-detained unless Respondents provide Petitioner with written notice and a pre-deprivation hearing to respond to and contest the decision. At any future re-detention hearing, the Government will bear the burden of proving that revocation of release and re-detention are lawful and warranted by clear and convincing evidence.
5. Respondents must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention, including his Florida driver license.

Dated this 6th day of October, 2026.

Jamal N. Whitehead
United States District Judge